IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Derek J. Brown, ) | |
| ) | C/A No. 0:12-2988-TMC |
| Petitioner, ) | |
| ) | |
| v. ) | **OPINION & ORDER** |
| ) | |
| Warden of Perry ) | |
| Correctional Institution, ) | |
| ) | |
| Respondent. ) | |
| ) | |

This matter is before the court on Petitioner Derek J. Brown's ("Brown") petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2), D.S.C., all pre-trial proceedings were referred to a magistrate judge.[1] Magistrate Judge Paige J. Gossett filed a Report and Recommendation ("Report") recommending Respondent's Summary Judgment Motion (ECF No. 15) be granted and the petition be dismissed with prejudice. (ECF No. 25). The magistrate judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. *Id*. at 19. Brown has filed objections to the Report. (ECF No. 54).[2]

The court is obligated to conduct a de novo review of every portion of the magistrate

---

[1] The magistrate judge makes only a recommendation to the court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

[2] After no objections were filed, the court originally adopted the Report and dismissed this action. (ECF No. 29). Brown, however, appealed contending that he never received a copy of the Report, and the Fourth Circuit Court of Appeals vacated the order and remanded for the court to determine whether Brown had ever received a copy of the Report. (ECF No. 42). After review, the court re-opened the case and directed the Clerk to re-send Brown a copy of the Report and the notice of his right to file objections. (ECF No. 43).

judge's report to which objections have been filed. *Id.* However, the court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a timely filed, specific objection, the magistrate judge's conclusions are reviewed only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

## I. Background/Procedural History

The underlying facts were summarized in the state court's opinion on direct appeal as follows:

> This case involves the drive-by shooting of fourteen-year-old Phillip Johnson, Jr. on August 4, 2001. Corey Shelton, Derek Brown, and Ricky Latimore were indicted with murder and possession of a firearm or a knife during commission of a violent crime in connection with this incident.
>
> On the night of the shooting, Johnson, his cousin Xavier Smith, and a number of friends attended a high school football game. After leaving the football game, the boys went to a friend's house on Pleasant View Drive, and "hung out" with ten to twelve boys in the front yard. Smith testified that around 11:00 to 11:30 p.m., a large, dark-colored car, which had been parked nearby when the boys arrived, came down the road with two guns firing out the windows. Someone in the group fired back at the car as it drove away. Johnson was shot in the drive-by.
>
> Johnson died from his gunshot wound on the way to the hospital. Bullet fragments removed from his body were sent to SLED for testing. At the scene, officers found fifteen 7.62mm casings, seven .45 casings, as well as a 9mm casing. Bullets that penetrated a nearby residence were also sent to SLED for testing.
>
> Smith could not identify the people in the assailant's car. Directly after the drive-by, he gave the police the names of Terrence Bishop, Darrell Brown, and "K," but testified that those were just the names of some boys with whom he had gotten into an argument at the football game. Smith also told the police at the scene that the car was green, while at trial he only remembered that it was dark.
>
> On August 25, 2001, Darryl Mosely was brought to the police station where he provided a statement against the co-defendants, who are his cousins. At trial, Mosely retracted his statement, claiming that he never read the statement, that he was lying because the officers threatened his life, and that they had fed him

2

the details and information in his statement. He did, however, admit on cross-examination that the statement accurately reflected what he told the officer. He also admitted at trial that he had seen the three defendants together before they left the "Lion's Den," but that he did not see any of them with a gun.

Mosely's original statement to police contained more incriminating information. He said that on the night of the incident, he saw Shelton with an SKS rifle and a banana clip strapped around his neck. He stated that the three defendants then got into a green four-door Pontiac Catalina and drove off.

On August 26, 2001, defendant Corey Shelton told Captain Williams where he could locate an AK–47. Officers went to the place he described and found an AK–47, some banana clips for the AK–47, and a .32 caliber revolver.

Defendant Derrick Brown made a statement to Chief Deputy Eddie Smith. In the statement, Brown said that at about 11:00 to 11:30 p.m., on the night of the shooting, he was driving down Pleasant View Drive in his Green Pontiac Catalina and drinking beer when he heard a shot. He said that he thought someone was shooting at him, so he pulled out his .45 caliber pistol and fired it out the window as he drove away. He stated he then hid the gun. Brown claimed he did not know who he was shooting at and did not know Phillip Johnson. After he had made this statement, Brown personally led police to where he hid the .45 caliber pistol.

The SLED examiner found that the bullet fragment taken from Johnson was too damaged to conclusively identify whether it came from Shelton's AK–47, but that its characteristics indicated it could have been fired from his weapon. The bullet that killed Johnson was not from a .45 pistol. The fifteen 7.62mm casings found at the scene were the type that could have been fired from Shelton's AK–47. All seven of the .45 casings found at the scene were matched to Brown's .45 caliber pistol. The SLED examiner also conclusively matched the bullet that had penetrated a nearby house to Brown's pistol. Revolvers like Shelton's .32 caliber do not automatically eject casings, which explains why none were found at the scene, but the SLED examiner did conclusively match Shelton's revolver to the other bullet that had penetrated a nearby house.

At the end of the State's case and again at the conclusion of the trial, Brown moved for a directed verdict, arguing the State failed to introduce any evidence he murdered Johnson. The motions were denied, and the jury convicted Brown of both murder and possession of a firearm during commission of a violent crime.

*State v. Brown*, 2006 WL 7287191 (S.C. Ct. App. Dec. 7, 2006)(unpublished)(footnotes omitted).

Brown specifically states that he agrees with the magistrate judge's recitation of procedural history. (Objections at 1). Accordingly, the court adopts the Background section of

the Report, and only briefly sets out the procedural history here.

Following a jury trial, Brown was convicted of murder and possession of a weapon during the commission of a violent crime. The circuit court sentenced Brown to life for the murder and five years' imprisonment for the weapons conviction. On direct appeal, Brown raised one issue - whether the trial judge erred by denying Brown's directed verdict motion. The South Carolina Court of Appeals affirmed Brown's convictions and sentence, and denied his petition for rehearing. Brown then filed a pro se application for post-conviction relief ("PCR") raising the following issues: 1) ineffective assistance of counsel; 2) prosecutorial misconduct; 3) subject matter jurisdiction; 4) jury tampering; and 5) denial of due process. Subsequently, through counsel, Brown amended his application to include the following four issues:

   1) Evidence of third party guilt was improperly excluded;

   2) The prosecutor improperly commented on Derek Brown's failure to take the stand;

   3) The real question in the motion for a directed verdict and on appeal was whether the State had produced evidence which was more than a suspicion that someone with whom Derek Brown associated committed the murder. Appellate counsel and trial counsel were inadequate in failing to frame the issue in this way;

   4) The charge of the trial judge impermissibly lessened the burden on the State.

Following an evidentiary hearing, the PCR Court denied Brown relief.

   Brown appealed , raising the following issues:

   1) Ineffective assistance of trial counsel;

   2) Ineffective assistance of appellate counsel;

   3) Denial of due process;

   4) Improper argument on defendant's right to not testify;

   5) Sufficiency of the evidence of third party guilt;

4

> 6) Ineffective assistance of counsel in regard to the directed verdict.

Within his petition, Brown elaborated on his ineffective assistance of counsel issues, as follows:

> A. Appellate counsel was inadequate for failing to raise the issue of third party guilt on appeal. The disallowance of the evidence denied Derek Brown due process of law.
>
> B. Appellate counsel was ineffective for failing to raise the denial of a mistrial when the prosecutor twice improperly commented on Derek Brown's silence.
>
> C. Trial counsel and appellate counsel were ineffective in framing the issue at the directed verdict stage and on appeal. The critical issue was whether the State's evidence created more than a suspicion that someone with whom Derek Brown was associated committed the murder.
>
> D. Trial counsel and appellate counsel were in effective in failing to object to the charge on reasonable doubt.

The South Carolina Supreme Court granted Brown's petition for a writ of certiorari as to issues A and B and denied certiorari as to the remaining issues. After briefing, on May 9, 2012, the South Carolina Supreme Court dismissed the petition for a writ of certiorari as improvidently granted. The remittitur was issued May 30, 2012.

On October 16, 2012, Brown filed this habeas petition raising the following claims:

> **Ground One:** Ineffective assistance of trial counsel for not "objecting to an erroneous reasonable doubt charge where the court charged "that reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt;" and for not objecting to the charge "that malice could be implied by the use of a deadly weapon."
>
> **Ground Two:** Ineffective assistance of counsel on direct appeal for raising only one issue on appeal and not raising issues regarding third party guilt, comment on right to remain silent and failure to testify, and an alleged *Bruton*[3] violation based upon the admission of the statement of a non-testifying codefendant.
>
> **Ground Three:** Prosecutorial misconduct for using allegedly perjured testimony to indict Brown.

---

[3]*Bruton v. United States*, 391 U.S. 123 (1968).

## II. Discussion

The magistrate judge found that Brown procedurally defaulted on Grounds One and Three and one of the claims raised in Ground Two. Specifically, the magistrate judge found that Brown procedurally defaulted on all of his claims of ineffective assistance of trial counsel (Ground One), his claim that appellate counsel was ineffective for failing to raise a *Bruton* issue on appeal (part of Ground Two), and his claims of prosecutorial misconduct (Ground Three). Further, the magistrate judge found that *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), is not applicable to Brown's claims of ineffective assistance of appellate counsel regarding the *Bruton* or prosecutorial misconduct claims. (Report at 9). Additionally, applying *Martinez* to Brown's claims of ineffective assistance of trial counsel, the magistrate judge concluded that Brown's claims are not substantial, and therefore cannot satisfy *Martinez*. (Report at 12). Finally, as to Brown's claims that appellate counsel was ineffective for raising only one issue on appeal (part of Ground Two), the magistrate judge concluded that Brown cannot demonstrate that the PCR court misapplied clearly established federal law or made objectively unreasonable factual findings when it rejected this claim. (Report at 17).

### A.  Application of *Martinez*

**1)  Ineffective Assistance of Appellate Counsel in regard to *Bruton* and Prosecutorial Misconduct Claims**

As Brown appears to concede that he procedurally defaulted on some of his claims, the court will begin with his argument that *Martinez* applies.  Brown contends that, pursuant to *Martinez*, the court should excuse his failure to present his claims relating to the *Bruton* violations and prosecutorial misconduct to the state courts because of the ineffective assistance of his appellate counsel.  Specifically, Brown contends that the magistrate judge erred by relying on a decision from the Sixth Circuit Court of Appeals, *Hodges v. Colson*, 711 F.3d 589, 603 (6th Cir.

6

2013), in determining that *Martinez* applies only to the procedural default of a claim of ineffective assistance of trial counsel. (Objections at 2).

In *Coleman v. Thompson*, 501 U.S. 722, 752 (1991), the Supreme Court held that any errors of PCR counsel cannot serve as a basis for cause to excuse a petitioner's procedural default of a claim of ineffectiveness of trial counsel. Subsequently, in *Martinez,* however, the Supreme Court established a "limited qualification" to the rule in *Coleman* and held that inadequate assistance of counsel at initial collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of trial.

Specifically, in *Martinez*, the Court considered whether a federal habeas court may excuse a procedural default of an ineffective assistance of counsel claim when the claim was not properly presented in state court due to an attorney's errors in an initial review collateral proceedings when that is the first instance in which a prisoner can bring an ineffective assistance of trial counsel challenge. The Court held that held that a federal habeas court can find cause to excuse a procedural default where:

> (1) the claim of 'ineffective assistance of trial counsel' was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the 'initial' review proceeding in respect to the 'ineffective-assistance-of-trial-counsel claim'; and (4) state law requires that an 'ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding .'

*Trevino v. Thaler*, 133 S.Ct. 1911, 1918 (2013) (quoting *Martinez*, 132 S.Ct. at 1318). The Court in *Martinez* did not distinguish between trial and appellate ineffective assistance of counsel. However, by its own language, *Martinez* is limited to claims asserting ineffective assistance of trial counsel, and other courts which have addressed the issue have held that *Martinez* does not apply to ineffective assistance of appellate counsel claims. *See Reed v. Stephens,* 739 F.3d 753,

7

778 n.16 (5th Cir. 2014)(court declined to consider ineffective assistance of appellate counsel under *Martinez*.); *Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013) (holding that "[u]nder *Martinez's* unambiguous holding our previous understanding of *Coleman* in this regard is still the law-ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of appellate counsel.");[4] *Banks v. Workman*, 692 F.3d 1133, 1148 (10th Cir. 2012)(holding *Martinez* applies only to procedural default of a claim of ineffective assistance at trial, not to claim of ineffective assistance of appellate counsel). *But see Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1289 (9th Cir. 2013) (holding that *Martinez* applies where the underlying ineffective assistance of counsel is by appellate counsel). Accordingly, the court disagrees with Brown's argument that these claims should be considered under *Martinez* and finds his objections to be without merit.

**2) Ineffective Assistance of Trial Counsel**

Brown alleges his trial counsel was also ineffective, and he concedes that he procedurally defaulted on these claims, but he argues he is entitled to have the default excused pursuant to *Martinez* due to the ineffective assistance of his PCR counsel. The magistrate judge, however, concluded that Brown could not meet the *Martinez* limited exception.

Under *Strickland v. Washington*, a petitioner must show that his counsel's performance was both unreasonably deficient and that the defense was actually prejudiced as a result of counsel's errors. *Strickland*, 466 U.S. 668, 684 (1984). There is a strong presumption that an attorney performed within the wide range of professional competence, and the attorney's

---

[4]The court notes that shortly after the magistrate judge filed her Report on August 5, 2013, the Sixth Circuit Court of Appeals amended and superseded its prior opinion in *Hodges* reported at 711 F.3d 589, which was cited by the magistrate judge in her Report. However, the court did not alter its holding that *Martinez* and *Trevino* are inapplicable. *Hodges*, 727 F.3d at 531.

performance will be deemed to have been deficient only if it fell below an objective standard of reasonableness measured under prevailing professional norms. *Id.* at 689, 694. To prove prejudice, the petitioner must demonstrate that there is a reasonable probability that, but for counsel's unreasonable errors, the result of the proceeding would have been different. *Id.* at 694.

The application of the *Strickland* test in the context of *Martinez* means that Brown is required to show that his representation during the PCR proceeding was objectively unreasonable, and that, but for his errors, there is a reasonable probability that Brown would have received relief on a claim of ineffective assistance of trial counsel in the state PCR matter.

In his objections, Brown alleges that trial counsel was ineffective for failing to object to the jury charges on reasonable doubt and malice and failing to file a motion under S.C.R.Crim.P 28 or 29 for a new trial after receiving a juror's statement.  (Objections at 7).  The magistrate judge found that Brown cannot demonstrate that these are substantial issues of ineffective assistance of counsel and that, but for PCR counsel's errors, there is a reasonable probability that Brown would have received relief on these claims.  (Report at 11).

As for the reasonable doubt charge, the trial judge charged the jury as follows:

> The State is not required to prove the guilt beyond of a defendant beyond all doubt or beyond every doubt, but beyond reasonable doubt, and when we say that proof must be established beyond a reasonable doubt those words should be given their plain and ordinary meaning. A reasonable doubt is a kind of doubt that would cause a reasonable person to hesitate to act. A reasonable doubt can arise from evidence presented in a case or lack of evidence in a case. To think that a defendant is probably guilty or that the circumstances are suspicious are not enough. Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt.

(ECF No. 14-33 at 31). Brown complains about the portion of the reasonable doubt instruction where the trial judge instructed that: "proof beyond a reasonable doubt is proof that leaves you

firmly convinced of the defendant's guilt." (Objections at 7).  However, the South Carolina courts have specifically approved a similar reasonable doubt instruction.  *See, e.g., State v. McHoney*, 544 S.E.2d 30, 36-7 (2001); *State v. Simmons*, 682 S.E.2d 19, 36 (S.C. Ct. App. 2009).

Brown also contends that his PCR counsel should have raised the issue of whether the trial court erred in charging the jury that malice could be implied from the use of a deadly weapon.  In *State v. Belcher*, 685 S.E.2d 802, 803-04 (S.C. 2009), the South Carolina Supreme Court held that "a jury charge instructing that malice may be inferred from the use of a deadly weapon is no longer good law in South Carolina where evidence is presented that would reduce, mitigate, excuse or justify the homicide."  Brown contends that trial counsel was ineffective at his 2003 trial for failing to object to a change in the law which occurred six years later when the South Carolina Supreme Court issued its decision in *Belcher*. However, the holding in *Belcher* was not retroactive, *see Byers v. Reynolds*, No. 11-20, 2012 WL 170192, at *2 (D.S.C. Jan.19, 2012), and therefore would not have been grounds for PCR.[5]

In his objections, Brown also contends that pursuant to *Teague v. Lane*, 489 U.S. 288 (1989), he is entitled to relief under *Belcher*.  In *Teague*, the Supreme Court held that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Teague*, 489 U.S. at 310. Under *Teague*, a new rule will only be applied to a case on collateral review if it falls into one of two exceptions. *Id*. at 311-13. The first exception provides that a new substantive rule of law will be applied retroactively if the rule places an entire category of primary conduct beyond the reach of the

---

[5]In *Belcher*, the court held that "[b]ecause our decision represents a clear break from our modern precedent, today's ruling is effective in this case and for all cases which are pending on direct review or not yet final where the issue is preserved" and that the ruling "will not apply to convictions challenged on post-conviction relief." *Id.* at 612-613.  Brown's direct appeal had concluded in 2007 prior to the issuance of the court's opinion in *Belcher*.

10

criminal law or if the rule alters the range of conduct or the class of persons that the law punishes. *Id.* at 311; *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004). The second exception provides a new rule of criminal procedure will be applied retroactively "if it requires the observance of those procedures that . . . are implicit in the concept of ordered liberty" and that are "watershed rules of criminal procedure." *Teague*, 489 U.S. at 311 (citations and internal quotation marks omitted). To qualify as a watershed rule, the rule must meet two requirements. "First, the rule must be necessary to prevent an impermissibly large risk of an inaccurate conviction. Second, the rule must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Whorton v. Bockting*, 549 U.S. 406, 418 (2007) (citations and internal quotation marks omitted).

Neither of these exceptions applies here. Because Brown's conviction was affirmed in 2007, the change in law did not apply to his case, and the jury charge was appropriate when given. *See Sheppard v. State*, 594 S.E.2d 462, 472 (S.C. 2004).

Lastly, Brown contends that in a November 5, 2003 affidavit, a former juror, Connie Williams, sets forth her understanding of the instructions, questions why Brown and his co-defendant did not testify, and states there are "other reasons why I think the guilty verdict is unfair." (ECF No. 54-1). At the PCR hearing, PCR counsel attempted to introduce the affidavit and, after the State objected, the PCR court stated that he would rule on it later. The PCR court never addressed the admissibility of the affidavit.

However, even if the affidavit had been admitted at the PCR proceeding, the affidavit would not have supported a claim for a new trial. Rule 606(b) of the South Carolina Rules of Evidence allows a juror to offer testimony as to "whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." Rule 606(b), SCRE. Rule 606 thus draws a distinction between

evidence of external influences on the jury's deliberations and comments of jurors occurring during deliberations. While the rule allows evidence of the former to be introduced, it prohibits the introduction of the latter. Here, in her affidavit, Juror Williams stated that she did not know the jury could come up with another decision and that she told the jurors that there was not enough evidence to convict, and she wondered why the defendants did not testify. However, there were no allegations of coercion or extraneous misconduct.

Because there was no prejudice resulting from PCR counsel's failure to raise these issues, Brown has not shown that PCR counsel's handling of these issues during the PCR proceeding was objectively unreasonable, and that, but for any error, there is a reasonable probability that Brown would have received relief on these claims in state court. Accordingly, *Martinez* does not save these claims from procedural default.

### 3) Ineffective Assistance of Appellate Counsel (Remaining Claims in Ground Two)

In his petition, Brown contends that his appellate counsel was ineffective for raising only one issue on appeal. Specifically, Brown contends that appellate counsel should have raised whether the trial court improperly excluded witness testimony regarding third party guilt and whether the prosecutor committed misconduct by commenting on his silence and decision not to testify.

#### a. Third Party Guilt

At trial, Brown proffered the testimony of Williams Stokes to support his allegation of third party guilt. The trial court, relying on *State v. Al-Amin*, 578 S.E.2d 32 (S.C. 2003), held that the proffered testimony was merely conjecture that someone else committed the offense. The PCR court found that Brown could not demonstrate prejudice for the failure of appellate counsel to raise the issue of third party guilt because the proffered evidence did not raise a reasonable inference as to Brown's innocence or include facts inconsistent with his guilt. The magistrate

judge concluded that Brown has failed to show that the PCR court unreasonably misapplied clearly established federal law. (Report at 15). As far the court can discern, Brown has not raised any objections regarding this claim.

### b. Comments on Silence

Brown alleges appellate counsel was ineffective for failing to raise the issue of the whether Solicitor's closing argument was improper. In his closing argument, the Solicitor stated that "No one has got on that stand, and that is where your evidence comes from, no has sat right there and told you anything different, have they?" (ECF No. 14-33 at 17-18). Trial counsel objected and moved for a mistrial. (ECF No. 14-33 at 18). The trial court stated that he did "not feel that the comments made by the Solicitor in his closing would amount to burden shifting," but he cautioned the solicitor to refrain form making any comments that could be construed as burden shifting. (ECF No. 14-33 at 20-21). The trial court then denied the motion for a mistrial and gave the jury a curative instruction. (ECF No. 14-33 at 21). The Solicitor then immediately repeated the substantially the same comment by stating that "nobody sat on that stand and said anything different." (ECF No. 14-33 at 22). Trial counsel again objected and the solicitor stated that the trial court had ruled it was not improper. *Id.* The trial court sustained the objection and again gave a curative instruction to the jury. (ECF No. 14-33 at 23).

The PCR court found that appellate counsel was not ineffective for failing to raise this issue on appeal. The PCR court noted that the Solicitor's comments were made in the context of his discussion of the ballistics evidence and were apparently an attempt to argue that the defense's ballistics expert had not refuted the State's theory. Moreover, the PCR court, while acknowledging that the evidence of Brown's guilt was not overwhelming, found that it would be unlikely that an appellate court would find these isolated comments so infected the trial so as to make the resulting conviction a denial of due process.

The magistrate judge found that Brown did not demonstrate that the remarks so infected the trial so as to make the resulting conviction a denial of due process. (Report at 16). The magistrate judge therefore concluded that Brown did not demonstrate that the PCR court unreasonably applied clearly established federal law. (Report at 17). In his objections, Brown contends that the comments were a violation of his federal rights and the PCR court's ruling was unreasonable. (Objections at 13-14).

Specifically, Brown alleges that the solicitor improperly commented on his right to remain silent in violation of *Doyle v. Ohio*, 426 U.S. 610 (1976). A claim of prosecutorial misconduct may rise to the level of a constitutional claim when a prosecutor's comments infringes on a defendant's specific rights, such as the right to remain silent or the right to counsel. *See Darden v. Wainwright*, 477 U.S. 168, 182 (1986). Improper remarks during a closing argument to the jury deny due process only if they so infect the trial with unfairness that reversal is required. *Id.* at 181; *United States v. Harrison,* 716 F.2d 1050, 1051 (4th Cir.1983). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974).

In analyzing "a due process claim premised on unfair prosecutorial conduct, the court is to examine several factors, including the nature of the prosecutorial misconduct, the extent of the improper conduct, the issuance of curative instructions from the court, any defense conduct inviting the improper prosecutorial response, and the weight of the evidence." *Humphries v. Ozmint*, 397 F.3d 206, 218 (4th Cir. 2005). *See also United States v. Lowe*, 145 F.3d 45, 50 (1st Cir.1998) (listing the following factors: "(1) whether the prosecutor's conduct was isolated or deliberate; (2) whether the trial court gave a strong and explicit cautionary instruction; and (3) whether it is likely that any prejudice surviving the judge's instruction could have affected the

14

outcome of the case"). These factors are examined in the context of the entire trial, and no one factor is dispositive. *Donnelly*, 416 U.S. at 639. The standard in *Donnelly* is a very high standard. "'[I]t is not enough that the remarks were undesirable or even universally condemned.'" *Darden*, at 181. "The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (*citing Donnelly*, 416 U.S. 637).

The court has reviewed the entire trial transcript and is troubled by the solicitor's actions. After the first objection and the trial court's curative instruction, the solicitor deliberately repeated the same comments necessitating another curative instruction by the trial court. (ECF No. 14-33 at 17-23). Moreover, at another time in the trial, he referred to Brown's silence. (ECF No. 14-31 at 11-17). Furthermore, the court agrees with the PCR court's assessment of the evidence of guilt - it was not overwhelming. However, the court also ultimately agrees with the PCR court that it would be unlikely that an appellate court would find these comments so infected the trial so as to make the resulting conviction a denial of due process.

The comments made by the solicitor in this case are less severe than the conduct at issue in *Donnelly*. In *Donnelly*, a first-degree murder case, defense counsel had expressed hope that the jury would return a verdict of not guilty. In response, the prosecutor intimated that the defendant had wanted to plead guilty but was denied the opportunity. Here, the solicitor's first comment to the jury was made in the course of an extended closing argument. Further, the trial court addressed the solicitor's comment and gave curative instructions. The second comment is more troublesome.[6] However, the potential effect that the solicitor's comments might have had on

---

[6]The solicitor stated that the trial court had ruled that the comments were not improper. (ECF No. 14-33 at 22). Actually, the trial court commented that he did not believe the comments amounted to burden shifting, but he did not state that the comments were not improper, and he gave a curative instruction. (ECF No. 14-33 at 20-22). The court believes that the trial court was merely expressing his view that a curative instruction could remedy the situation and not that he believed the comments

15

Brown's trial does not approach that present in *Donnelly*. *See Darden*, 477 U.S. at 181-82 (finding that a prosecutor's several erroneous and inflammatory statements during closing argument did not "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process" (*quoting Donnelly*, 416 U.S. at 637)).  Accordingly, the court concludes that Brown has not demonstrated that the PCR court unreasonably applied clearly established federal law.

## Conclusion

After a thorough review of the Report and the record in this case pursuant to the standards set forth above, the court finds Petitioner's objections are without merit.  Respondent's Summary Judgment Motion (ECF No. 15) is **GRANTED** and the Petition is **DISMISSED with prejudice**.

A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find both that his constitutional claims are debatable and that any dispositive procedural rulings by the district court are also debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In the instant matter, the court finds that its ruling on the claim regarding the solicitor's comments on Brown's right to remain silent is debatable.  Accordingly, the court issues a certificate of appealability only as to the claim that appellate counsel was ineffective for failing to raise the issue of the  whether Solicitor's closing argument was improper.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

Anderson, South Carolina
September 25, 2014

---

were not improper.  This view is bolstered by the trial court's comments after the solicitor repeated the comments when the trial court stated that the "last remark, particularly after the cautionary instruction, was improper and inappropriate . . ." (ECF No. 14-33 at 23).